Robert A. Simon
State Bar No. 18390000
Henry W Simon, Jr.
State Bar No. 18394000
Barlow Garsek & Simon, LLP
3815 Lisbon Street
Fort Worth, Texas 76107
(817) 731-4500
(817) 731-6200 (Facsimile)
ATTORNEYS FOR DEBTORS

## UNITED STATES BANKRUPTCY COURT
## THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **In Re:** | § | **CASE NO. 04-41922-dml-7** |
| **GEORGE WILLIAM CHILDS III** | § | |
| **A/K/A BILL CHILDS** | § | |
| **A/K/A BILLY CHILDS AND** | § | |
| **SUZANNE B. CHILDS** | § | |
| **Debtors** | § | |
| | § | **CHAPTER 7** |
| **FIRST NATIONAL BANK AND TRUST** | § | |
| **Complainant** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 04-4221-dml** |
| | § | |
| **GEORGE WILLIAM CHILDS III** | § | |
| **A/K/A BILL CHILDS** | § | |
| **A/K/A BILLY CHILDS and** | § | **Hearing Date: Not Scheduled** |
| **SUZANNE B. CHILDS** | § | **Hearing Time: Not Scheduled** |
| **Defendants** | §____ | |

## JOINT PROPOSED FINDING OF FACT AND CONCLUSIONS OF LAW

**TO THE HONORABLE DENNIS MICHAEL LYNN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Defendants, George William ("Bill") Childs, III and Suzanne B. Childs (collectively the

"Debtors"), and Plaintiff, First National Bank and Trust (the "Bank"), submit their Joint Proposed

JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW-Page 1

Findings of Fact and Conclusions of Law in accordance with the Court's Scheduling Order.

## I.

## PROPOSED FINDINGS OF FACT

1    Bill Childs was a sole proprietor in the livestock business. He raised, cared for,
     trained, and sold horses and cattle.

2.   Suzanne Childs was and is a public school teacher, who did not participate in Bill
     Childs' livestock business.

3.   On or about February 4, 1998, the Bank lent Bill Childs $100,000 for his livestock
     business. The loan was evidenced by a promissory note and secured by a security
     interest in livestock and equipment. The Bank filed a UCC-1 financing statement to
     perfect the security interest in livestock and equipment. Suzanne Childs did not sign
     the promissory note or the security agreement, but signed a guaranty of the note.

4.   On November 9, 1998, the Bank lent Bill Childs $100,000 for his livestock business.
     The loan was evidenced by a promissory note and secured by security interest in
     livestock and equipment. The Bank filed a UCC-1 financing statement to perfect the
     security interest in livestock and equipment. The promissory note dated February 4,
     1998 was repaid, in part with the proceeds of the promissory note, dated November
     9, 1998. Suzanne Childs did not sign the promissory note or the security agreement,
     but signed a guaranty of the note.

5.   On or about November 20, 1998, the Bank lent the Debtors $18,533 for the purchase
     of 1999 Toyota Camry VIN JT2BG22K7X0279318. The loan was evidence by a
     consumer a promissory note and security agreement.

6.   On or about February 2, 1999, the Bank lent Bill Childs $75,050 for use in his
     livestock business. The loan was evidenced by a promissory note and secured by a
     security interest in livestock and equipment and a $25,000 certificate of deposit,
     pledged to the Bank. Suzanne Childs did not sign the promissory note or the security
     agreement, but signed a guaranty of the note.

7.   In early April 1999, shortly after April 2, 1999, Bill Childs was seriously injured
     when a horse fell on top of him. He suffered a severely broken leg that required
     surgery. Bill Childs was unable to work as a stockman for approximately six months.

8.  On or about April 12, 1999, the Bank received $17,051 from Richie Brothers Auctioneers, representing the proceeds of sale of a 1977 Caterpillar 977L Crawler Loader, serial number 11K8535 (the "Bulldozer"). The Bulldozer was part of the Bank's collateral for its loans to Bills Childs.

9.  On or about July 16, 1999, the Bank lent Bill Childs an additional $25,000. The loan was evidenced by a promissory note and secured by a lien on livestock and equipment.

10. Physically unable to run the livestock business, Bill Childs began to liquidate the collateral. Bill Childs made the following payments of principal and interest against the indebtedness:

| | | |
|---|---|---|
| A. | May 11, 1999 | $9,000 |
| B. | June 18, 1999 | $21,783.24 |
| C. | June 22, 1999 | $5,000 |
| D. | June 23, 1999 | $4,890.09 |
| E. | June 23, 1999 | $3,390.09 |
| F. | June 23, 1999 | $109.91 |
| G. | August 18, 1999 | $959.08 |
| H. | October 25, 1999 | $3,750 |
| I. | December 20, 1999 | $5,714.45 |
| J. | December 29, 1999 | $2,785.55 |
| K. | December 31, 1999 | $2,922.87 |
| L. | December 31, 1999 | $1,077.13 |
| M. | February 25, 2000 | $5,000 |
| N. | March 16, 2000 | $1,676.03 |
| O. | March 16, 2000 | $584.24 |
| P. | May 25, 2000 | $2,355.73 |
| Q. | May 25, 2000 | $486.80 |
| | | $71,485.21 |

11. On May 25, 2000, the Bank repossessed two trailers from Bill Childs. The trailers were sold for $6,790, which was applied to the debt.

12. The Debtors paid the note on the 1999 Toyota Camry down to $11,975.79 and then defaulted. The Bank repossessed the 1999 Toyota Camry on June 6, 2000 and resold the car at auction for $14,500, generating a net gain on the sale in the amount of $2,524.21.

13. The Bank suffered no losses on any loan in which Suzanne Childs was maker, as opposed to a guarantor.

**JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW-Page 3**

14.   The Bank's net losses on its loans to Bill Childs were the following:

| | | |
|---|---|---|
| A. | The promissory note dated 11/9/98 | $56,270.97 |
| B. | The promissory note dated 2/12/99 | $75,050.00 |
| C. | The promissory note dated 7/16/99 | $22,127.13 |
| | Total | $153,448.10[1] |

15.   Bill Childs closed the livestock business in 2000, after all of its assets were either liquidated or repossessed by the Bank.

16.   The Bank sued the Debtors in State District Court in Oklahoma in Cause No. 153-188791-01 and recovered judgment, on March 15, 2001, in the principal amount of $191,942 (the "Judgment"), consisting of the principal sum of $153,448.10, pre-judgment interest in the amount of $13,023.89, attorneys' fees in the amount of $24,970.80, and costs in the amount of $500.  The Judgment bore annual interest at ten percent (10%) from March 15, 2001, to the Petition Date.  With pre-judgment interest, the debt on the Petition Date was approximately $230,000.

17.   The Bank domesticated the Judgment in Tarrant County.  The Bank sent post-judgment discovery to the Debtors, which they failed to answer.  The Bank filed a Motion to Compel.  The 153rd Judicial District Court, Tarrant County, Texas imposed a $1,000 sanction on the Debtors for failure to respond to post-judgment discovery.

18.   The Debtors filed their Chapter 7 case on February 23, 2004.

19.   At the time the Debtors filed their Voluntary Petition, the accounting records for Bill Childs' former livestock business were in the possession of Ruth Haynes, CPA, who was assisting the Debtors in preparing and filing federal income tax returns for several prior tax years.

20.   The Debtors filed timely Schedules of Assets and Liabilities, which listed, among other debts, the Judgment held by the Bank.  The Debtors listed the Bank on their creditor matrix.  The Bank received timely notice of the Debtors' bankruptcy case.  The Schedules did not list the $1,000 owed to the Bank for discovery sanctions or any secured or unsecured claim with respect to the 1999 Toyota Camry.

21.   The Debtors appeared for their Section 341(a) meeting on April 5, 2004.  Bill Childs testified truthfully that he liquidated the Bank's collateral and that

---

[1]The Debtors were not credited for the Bank's $2,524 21 gain on the sale of the Toyota Camry

some of the proceeds of the liquidation of the Bank's collateral were paid to the Bank.

22.   After the Section 341(a) meeting, the Bank requested that the Debtor make their accounting records available for inspection. The Debtors agreed to do so, but explained that Ruth Haynes, CPA had possession of them. The Debtors requested that Ms. Haynes turn over the accounting records, but she refused to release them until she was paid at least $6,000, which the Debtors did not have.

23.   After the Debtors filed their Voluntary Petition in February 2004, the Bank initiated an investigation to determine whether the Debtor had engaged in conduct sufficient to prevent their discharge pursuant to 11 U.S.C. § 727(a). The Bank initially believed that the Debtor had done so. The Bank filed its Complaint Objecting to Discharge, in which the Bank alleged as follows: 1) Bill Childs falsely testified at the Section 341(a) meeting that he had paid at least some of the proceeds of the sale of collateral to the Bank, when he had not done so; 2) the Debtors failed to satisfactorily explain their deficiency of assets to satisfy creditor claims; 3) the Debtor improperly withheld their accounting records from the Bank; 4) the Childs improperly failed to schedule a debt owed to the Bank and secured by a lien on 1999 Toyota Camry and improperly failed to schedule the $1,000 sanctions award to the Bank. In addition, the Bank alleged that the Debtors have made false representations of fact in connection with obtaining the loan and that the Debtors willfully and maliciously injured the Bank by converting the Banks's collateral to their personal use. The Bank sought a determination that the Debtor's debts to the Bank were non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(6).

24.   The Debtors sent discovery requests to the Bank and received timely responses, including documents showing that: 1) the Bank received a series of payment from Bill Childs in 1999 and 2000, when he was liquidating the Bank's collateral. The documents also show that the Bank had received all of the proceeds ($17,051) from the sale of the Debtors' bulldozer; 2) the Bank repossessed the 1999 Toyota Camry and sold it for net gain of $2,524.21. When it filed its Complaint, the Bank did not recognize that it received the proceeds from the sale of the Debtors' bulldozer. The Bank further failed to take into account that payments it accounted for as "interest" or "renewal fees" were funded by proceeds from the sale of collateral. Accordingly, Bill Childs testified truthfully when he stated in the Section 341(a) meeting that some of the proceeds of the sale of the Bank's collateral had been paid to the Bank. The Bank also did not realize that the Debtors did not owe the Bank any debt on the 1999 Toyota Camry because the Bank

recovered all of its money from the resale of the car. Accordingly, the Debtors did not wrongfully fail to schedule such debt.

25.    When the Debtors filed their Chapter 7 case, they did not have access to the their accounting records. The records were in the possession of Ruth Haynes, the Debtor's accountant, who refused to relinquish them unless she were paid for prior work. After unsuccessful negotiations with Ruth Haynes lasting several weeks, the Debtors finally subpoenaed their accounting records. Ms. Haynes turned them over and the Debtors made the accounting records available to the Bank for inspection and review.

26.    The Debtors did not intentionally fail to schedule the $1,000 debt to the Bank for discovery sanctions. The failure to schedule the debt was inadvertent.

27.    During its two (2) day review of the Debtors' accounting records, the Bank found extensive documentation showing that Bill Childs had liquidated his livestock holdings and the prices that he received at auction. The records also reflected expenses incurred in maintaining and transporting the livestock to the auction sites. The Bank was able to determine that some amount of the sale proceeds had been paid to the Bank, some amount was paid to other creditors, and some amount had been used for the Debtors' living expenses. The deficiency in the Debtors' assets is adequately explained.

28.    The precise amount of sales proceeds of the Bank's collateral that Bill Childs converted to personal use to pay living expenses or improperly paid to creditors other than the Bank is difficult to determine but the Debtors and the Bank have stipulated that the amount is $100,000.

29.    Although she guaranteed her husband's obligations to the Bank, Suzanne Childs did not sign the promissory notes or the security agreements related to the livestock business. She did not participate in any way in the liquidation of the livestock, trailers, or ranching equipment or in the disposition of the proceeds. Therefore, Suzanne was not responsible for the conversion of the Bank's collateral.

30.    The Debtor did not make any false representations to the Bank in connection with loans that they received.

31.    The factual errors in the Bank's Complaint Objecting to Discharge were inadvertent.

**JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW-Page 6**

## II.

### PROPOSED CONCLUSIONS OF LAW

1.    This is an Adversary Proceeding, governed by Federal Rules of Bankruptcy Procedure 7001, et seq. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

2.    The Debtors did not intentionally destroy, mutilate, falsify, or fail to preserve any recorded information from which their financial condition or business transactions could be ascertained. The Debtors did not intentionally fail to schedule a $1,000 debt owed to the Bank for discovery sanctions. The Bank's objection to discharge pursuant to 11 U.S.C. § 727(a)(3) is overruled.

3.    The Debtors did not give false testimony the Section 341(a) meeting or make a false oath or account. The Bank's objection to discharge pursuant to 11 U.S.C. § 727(a)(4) is overruled.

4.    The Debtors have satisfactorily explained the deficiency in assets to meet their obligations. The Bank's objection to discharge pursuant to 11 U.S.C. § 727(a)(5) is overruled. The Debtors are entitled to a discharge of all dischargeable debts. The Clerk will be directed to issue a discharge for the Debtor's benefit.

5.    The Debtors did not make any false representations to the Bank in connection with obtaining loan from the Bank. The Bank's claim that the Debtor's debts to the Bank are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2) for fraud is not supported by the evidence and is denied.

5.    The Debtors willfully and maliciously injured the Bank by failing to respond to post-judgment discovery. Accordingly, the Debtor's debt to the Bank for $1,000 in discovery sanctions for failure to respond to post-judgment discovery is excepted from discharge as to both Debtors pursuant to 11 U.S.C. § 523(a)(6).

6    Suzanne Childs had no control of the collateral securing the Bank's loans to the Debtors and did not willfully and maliciously injure the Bank's property. The Bank's claim against Suzanne Childs pursuant to 11 U.S.C. § 523(a)(6) for conversion of its collateral is denied. All of Suzanne Childs's debts to the Bank, except for $1,000, are dischargeable.

7.    Debtor, Bill Childs improperly converted a portion of the Bank's collateral securing the loans to his own use for living expenses and improperly paid

**JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW-Page 7**

other creditors with proceeds of selling the Bank's collateral. The amount of loan proceeds improperly converted is stipulated to be $100,000. The conversion of collateral without legally sufficient justification is willful and malicious injury within the meaning of 11 U.S.C. § 523(a)(6). Bill Childs's debt to the Bank for conversion of collateral is excepted from discharge in the amount of $100,000. The balance of Bill Childs's debt to the Bank does not result from willful and malicious injury and is dischargeable.

8.      Each party shall bear its own attorneys' fees and court costs.

December 13, 2005

Respectfully submitted,

**BARLOW GARSEK & SIMON, LLP**

/s/      Robert A. Simon

By:_____
          Robert A. Simon
          State Bar No. 1839000
          Henry W. Simon, Jr.
          State Bar No. 18394000

3815 Lisbon Street
Fort Worth, Texas 76107
(817) 731-4500
(817) 731-6200 (Facsimile)
ATTORNEYS FOR DEBTORS

**JOHNSTON & ASSOCIATES**

/s/      Ashley Myrick

By:_____
          Michael W. Johnston
          Texas Bar No. 10940300
          Ashley L. Myrick
          Texas Bar No. 24037159

307 West Seventh Street, Suite 800
Fort Worth, Texas 76102
(817) 820-0825
(817) 820-0830 (facsimile)
ATTORNEYS FOR FIRST NATIONAL
BANK AND TRUST CO.

**JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW-Page 8**