Case 04-04221-dml Doc 36 Filed 03/30/06 Entered 03/30/06 09:36:10 Page 1 of 16

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed March 29, 2006

United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GEORGE WILLIAM CHILDS III | § | |
| A/K/A BILL CHILDS | § | |
| A/K/A BILLY CHILDS AND | § | |
| SUZANNE B. CHILDS | § | |
|     Debtors. | § | CASE NO. 04-41922-DML-7 |
| | § | |
| FIRST NATIONAL BANK AND TRUST | § | |
|     Plaintiffs | § | |
| | § | |
| vs. | § | ADV. NO. 04-4221 |
| | § | |
| GEORGE WILLIAM CHILDS III | § | |
| A/K/A BILL CHILDS | § | |
| A/K/A BILLY CHILDS AND | § | |
| SUZANNE B. CHILDS | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION

The adversary proceeding before the court raises the issues of whether the Debtors'

discharge should be denied under 11 U.S.C. § 727, and whether the Debtors' debts to First

National Bank and Trust (the "Bank") should be excepted from discharge under 11 U.S.C. § 523.

Memorandum Opinion – Page 1
G:\ORD-Server\activePDF\Sign\InputFolder\dlynn\60928_299516.DOC

This adversary was initiated by a complaint (the "Complaint") filed by the Bank seeking denial of the Debtors' discharge under 11 U.S.C. § 727, and in the alternative, exception of the Debtors' indebtedness to the Bank from discharge based on 11 U.S.C. § 523. The parties previously proposed a settlement agreement, but after hearing the arguments of the parties, the court denied approval of the proposed settlement. The parties have effectively stipulated to all the facts. The court heard arguments on the Complaint on January 9, 2006, and offered the parties the opportunity to file briefs thereafter; the Bank filed a supplemental brief.

The court exercises core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(J). This memorandum opinion embodies the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## I. Background

George William Childs ("Childs," and together with Suzanne Childs "Debtors"), a sole proprietor in the livestock business, relied on the Bank to finance his business. Between February 4, 1998, and July 16, 1999, the Bank lent Childs money on four separate occasions. The total amount lent to Childs was approximately $300,051. Although the terms of the loan agreements varied, each of the four loans was secured, at least in part, by livestock and equipment used in Childs' livestock business. On November 20, 1998, the Bank lent the Debtors $18,533 for the purchase of a vehicle. This loan was evidenced by a promissory note and secured by a 1999 Toyota Camry.

In April 1999, Childs was seriously injured and could not operate his livestock business. Unable to generate the cash needed to satisfy his obligations, Childs began liquidating the Bank's collateral, using at least some of the liquidation proceeds to satisfy his indebtedness with

the Bank. On or about April 12, 1999, the Bank received $17,051 from Ritchie Brothers Auctioneers representing the proceeds from the sale of a bulldozer that was part of the Bank's collateral. Between May 11, 1999, and May 25, 2000, Childs made payments totaling $71,485.21 against his indebtedness with the Bank.

The Bank also took part in the liquidation of its collateral. On May 25, 2000, the Bank repossessed two trailers from Childs, sold the trailers, and applied the proceeds to Childs' indebtedness with the Bank. Two weeks later, on June 6, 2000, the Bank repossessed Debtors' 1999 Toyota Camry. The purchase money loan, which was secured by the Camry, had been paid down to $11,975.79, and the sale of the vehicle for $14,500 generated a net gain in the amount of $2,524.21. The Bank did not pay the gain on the sale of the Camry to the Debtors or apply it to the balance of Childs' debt. Childs closed his livestock business in 2000 after all of its assets had been liquidated or repossessed by the Bank.

The Bank sued the Debtors in State District Court in Oklahoma (Cause No. 153-188791-01) for breach of contract on June 20, 2000. The Oklahoma Court, on March 15, 2001, awarded the Bank a judgment in the principal amount of $191,942, bearing annual interest at ten percent. The Bank domesticated the judgment in Tarrant County, Texas, in late 2001 and sent post-judgment discovery to the Debtors, which they failed to answer. Consequently, the 153rd Judicial District Court imposed a $1,000 sanction on the Debtors for failure to respond to discovery.

Debtors filed for relief under chapter 7 of the Bankruptcy Code[1] (the "Code") on February 23, 2004. The Debtors' meeting of creditors was held on April 5, 2004, and on April 6,

2004, the trustee filed his report of no distribution, signaling that there would be no return to unsecured creditors in the case. In their schedules and statement of affairs, Debtors listed the judgment held by the Bank, but they did not include the $1,000 awarded by the 153rd Judicial District Court for post-discovery sanctions. When asked about the Bank's collateral at the Debtors' § 341 meeting, Childs testified that he had used some of the proceeds from the sale of the Bank's collateral to repay the Bank. Believing Debtors had, *inter alia*, misallocated the proceeds from the sale of its collateral, the Bank filed its Complaint.

In the Complaint, the Bank sought denial of Debtors' discharge under Code § 727 as well as a determination that Debtors' debts to the Bank are not dischargeable under Code § 523. The Complaint alleged that discharge should be denied based on Code § 727(a)(3) (destruction of or failure to keep records) because the "Debtors failed to fully list the debt owed by them to Complainant, including a security interest in a Toyota Camry, a security interest in certain personal property, and the $1,000.00 in sanctions awarded to Complainant against Defendant Debtors." In support of its claim that the Debtors' discharge should be barred under Code §§ 727(a)(4) (false oath) and 727(a)(5) (failure to explain loss of assets), the Bank alleged, "George Childs knowingly or fraudulently made a false oath or account and failed to satisfactorily explain any deficiency of assets to meet the debtor's liabilities." The Bank, in the Complaint, "vehemently denie[d]" that it had received at least some of the proceeds from the collateral. To support its position, the Bank, on the same day, filed an affidavit, in which Brent Vickery, the Bank's representative, stated "First National Bank and Trust denies that it received any of the proceeds from the sale of collateral for application to the loans owed by George Childs and/or

---

1   11 U.S.C. §§ 101, *et seq.*

Suzanne Childs to the Bank."

The Bank also asserted two bases under Code § 523 for exception of its claims from Debtors' discharge. First, the Bank alleged that its claims should be excepted from discharge based on Code § 523(a)(6) (willful and malicious injury to another entity) because the "Debtors, without regard for the Complainant's claim on the property, sold the collateral and failed to tender *any* of the proceeds to Complainant…." (emphasis added). The Bank also alleged that its claims should be excepted from discharge based on Code § 523(a)(2) (false representation) because "the loan obtained by Defendant Debtors from Complainants was obtained through false representations."

After various procedural moves, the parties filed a Joint Motion for Approval of Compromise and Settlement Agreement (the "Settlement"). The terms of the Settlement were as follows:

1. The Bank's section 727 objection to the Debtors' discharge would be overruled.

2. Suzanne Childs' debt to the Bank in the amount of $1,000 for discovery sanctions would be deemed non-dischargeable.

3. Childs' debt to the Bank would be deemed non-dischargeable to the extent of $100,000, and otherwise discharged.

4. Childs' would pay the Bank $48,000 in monthly installments of $500 for a period of eight years. If the payments were timely made, the Bank would release the balance of the non-dischargeable judgment.

5. Childs' would pay the quarterly premiums on a $250,000 life insurance policy that was assigned pre-petition to the Bank as collateral. If Childs died before the $48,000

    was paid, the Bank would take $175,000 of the policy proceeds and remit $75,000 to Childs' estate or to Suzanne Childs, at her election. If Childs were living at the time the $48,000 was paid in full, the Bank could choose to resume paying the quarterly premiums. If the Bank elected not to pay the quarterly premiums, the life insurance policy would be assigned back to Childs. If the Bank elected to continue paying the premiums, it would retain the right to receive $175,000 upon Childs' death, the balance to be paid to his estate or to Suzanne Childs.

6. The Bank agreed not to record, execute, or otherwise seek to enforce the judgment so long as the Debtors made payments according to the terms of the Agreement.

On February 3, 2005, a hearing was held to determine whether the Settlement should be approved. The court, for reasons discussed below, refused to approve the Settlement and docketed the adversary for trial. On December 14, 2005, the parties filed joint findings of fact and conclusions of law. The joint findings of fact generally mirror those set out in section A. In their joint filing, the parties agree that the Bank's section 727(a) claim was based upon factual errors and the objection to discharge should be overruled. The parties also agree that the Debtor's $1,000 debt for discovery sanctions is non-dischargeable and that any other debts owed by Suzanne Childs are dischargeable. Finally, the parties agree that a portion of the debt owed by Bill Childs is non-dischargeable pursuant to section 523(a)(6) due to his improper conversion of collateral. Essentially, the parties stipulated facts and agreed to conclusions of law in a way that strong-arms the court into a ruling that would substantially effect the Settlement. At the January 9, 2006, hearing, the parties presented their joint findings of fact and conclusions of law to the court.

## II. Issues

Before the court are the issues of whether the Debtors' discharge should be denied under Code § 727(a)(3), (4), or (5), and whether the Debtors' debts to the Bank should be excepted from discharge under Code § 523(a)(2) or (6). Having considered the pleadings, evidence, arguments of counsel, and record in this case, the court concludes that the Debtors' discharge should be granted without exception.

## III. Discussion

Before addressing the relief sought in the Complaint, the court will explain its reasoning in denying approval of the Settlement. This is necessary because the parties appear to have designed their joint findings of fact and conclusions of law so that the court will have little choice but to dispose of this adversary on terms substantially the same as the Settlement.

FED. R. BANKR. P. 7041 provides that a complaint objecting to the debtor's discharge under section 727 shall be dismissed at the plaintiff's request "only on order of the court containing terms and conditions which the court deems proper." Whether a settlement should be approved lies within the discretion of the trial judge. *Traxler v. Traxler (In re Traxler)*, 277 B.R. 699 (Bankr. E.D. Tex. 2002) (citing *Matter of Jackson Brewing Co.*, 624 F.2d 599, 602-603 (5th Cir. 1980)). The court is thus given broad discretion in deciding whether or not to approve settlement of a discharge dispute.

The Code allows a creditor to assert that its claim should be excepted from discharge. Code § 523. The Code also allows a creditor—or a Chapter 7 trustee or the United States Trustee—to seek denial of a debtor's discharge. Code § 727(c)(1) ("[t]he trustee, a creditor, or the United States trustee may object to the granting of discharge…"). Denial of discharge is

among the most severe sanctions a Chapter 7 debtor may suffer. *See Rosen v. Bezner (In re Rosen)*, 996 F.2d 1527, 1534 (3d Cir. 1993) (denial of discharge is an "extreme penalty."); *In re Murray*, 249 B.R. 223, 227 (E.D.N.Y. 2000) (denial of discharge is a "severe sanction"); *see also In re Jones*, 490 F.2d 452, 456 (5th Cir. 1974) (statutory provisions relating to discharge should be construed liberally in favor of the debtor and against the objecting creditor); *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996) (same).

A debtor will be prepared to go to great lengths to avoid or resolve a challenge to his or her discharge. This dynamic provides a creditor with a potentially significant weapon in dealing with a debtor. Policing the use by creditors of section 727 is important to ensure that the provision is invoked only in support of a general denial of discharge for the benefit of all creditors and not simply to engineer a recovery for a single creditor.

A creditor that elects to pursue a claim belonging to a bankrupt's estate acts as a fiduciary for the benefit of all creditors of the estate. *See Young v. Higbee Co.*, 324 U.S. 204, 212-13 (1945). Acting as estate representative, such a creditor loses the ability to act solely in its own interest. As the Supreme Court stated in *Young*:

> "[Creditors] cannot avail themselves of the statutory privilege of litigating for the interest of a class and then shake off their self-assumed responsibilities to others by a simple announcement that henceforth they will trade in the rights of others for their own aggrandizement."

*Young*, 324 U.S. at 212-13. Accordingly, settlement of an action under section 727 must benefit all creditors, not just the plaintiff.

The court shares the view of courts that allow settlement of section 727 claims if the proceeds are for the benefit of the estate. *See Bankruptcy Receivables Mgmt. v. De Armond (In*

*re De Armond)*, 240 B.R. 51, 60 (Bankr. D. Cal. 1999) ("The fiduciary duty violation and resulting tainted settlement can only be cured by turning the settlement over to the trustee for distribution to all creditors."); *Bank One, Crawfordsville, N.A. v. Smith (In re Smith)*, 207 B.R. 177, 178 (Bankr. N.D. Ind. 1997) (holding that settlement is improper unless the same parties that would benefit from the successful prosecution of a particular action will also receive the benefits of its settlement); *In re Bates*, 211 B.R. 338, 346 (Bankr. D. Minn. 1997) (finding it inappropriate to approve a proposed settlement of a section 727 proceeding where the consideration offered in exchange for the dismissal of the plaintiff's complaint will inure to the benefit of a single creditor rather than for the benefit of all creditors). To allow a creditor to use freely a right shared by all estate creditors to persuade a debtor to settle with just that creditor would destroy the delicate system of checks and balances respecting the rights of debtors and creditors under the Bankruptcy Code. Section 727 may be invoked by creditors because a trustee may lack the economic resources to seek denial of a debtor's discharge,[2] whereas a creditor may have the economic incentive—and unique knowledge—necessary to pursue such a claim. But section 727 also poses the most potent threat to a debtor's fresh start. *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1309 (2d Cir. 1996). Allowing use of that threat by a creditor for its own advantage could lead to serious abuses surely not intended by Congress.[3]

In the case at bar, the parties argued that the Bank's section 727 claims were without merit and the Settlement represented resolution of the Bank's claims under Code § 523.

---

[2] In the case at bar, a no-asset case, exactly this situation existed.

[3] In fact, an agreement by a debtor to pay a creditor in order to avoid a discharge challenge could fall within 18 U.S.C. § 152(6).

However, Debtors agreed to the Settlement knowing that, if this adversary were not settled, their discharge and their fresh start would be a risk. Because the Settlement's only benefit to the estate and creditors other than the plaintiff was withdrawal of the Bank's claim (which, in a no-asset case, is in reality no benefit at all), the court would not approve the Settlement. If the Settlement benefited <u>all</u> Debtors' creditors, the court would likely have ruled differently. Likewise, had the Bank dismissed its claims under section 727(a) <u>before</u> proposing the Settlement, such that the Debtors' agreement to its terms could not have been motivated by the threat to their discharge, the court likely would have approved it.[4] As it is, the Settlement, on its face, reflected abuse of the fiduciary role assumed by the Bank.

The court is troubled by the parties' apparent attempt to make an end run around the court's ruling on the Settlement by stipulating to facts in a way that appear designed to lead to a ruling that substantially effects the Settlement.[5] If the court would not approve the proposed settlement, an indirect route to the same result can be no more acceptable. *See, e.g., United States v. Doyle*, 121 F.3d 1078, 1086 (7th Cir. 1997); *Creek v. Village of Westhaven*, 80 F.3d 186, 192 (7th Cir. 1996).

Despite the parties' efforts to bully the court into concluding that Childs' indebtedness to the Bank should be excepted from discharge, the stipulated facts do not in any case support this conclusion. The Bank bears the burden of proving its objections. FED. R. BANKR. P. 4005. The

---

[4] *See* FED. R. BANKR. P. 7041. If the Bank gave up its general objections to discharge and no other party sought to pursue them, the court could be confident that the Bank's use of section 727 was not to bludgeon Debtors into accepting the Settlement.

[5] If Debtors genuinely wish to repay all or part of their debt to the Bank, they may do so. *See* Code § 524(f) ("Nothing…prevents a debtor from voluntarily repaying any debt.").

Bank has presented no evidence supporting its section 727(a)(3) and (5) claims or its section 523(a)(2) claim. Accordingly, the Bank's objections based on those sections must be denied.

With respect to the Bank's section 727(a)(4) claim, Debtors' discharge should be denied if, *inter alia*, Debtors "knowingly and fraudulently, in or in connection with [their bankruptcy case] … made a false oath or account…." Code § 727(a)(4)(A). Violation of this section occurs when the debtor knowingly and fraudulently makes material misstatements in the schedules or statement of affairs. *See, e.g., Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987); *Farmers Coop. Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982). The courts have held that a debtor's discharge may be denied by reasons of multiple errors or omissions in schedules and statement of affairs that amount to a reckless disregard for the truth. *See Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380 (5th Cir. 2001); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174 (5th Cir. 1992).

The Bank has provided evidence of only one misstatement in the Debtors' schedules, failure to list the $1,000 sanction ordered by the 153rd District Court. On the record before it, and particularly given the Bank's cavalier attitude toward the truth as evidenced by its own filings (discussed below), the court cannot find that the misstatement made by the debtor was made knowingly and fraudulently, or that failure to include the $1,000 judgment amounts to reckless disregard for the truth. Accordingly, the Bank's section 727(a)(4) claim is denied.

The court is also not prepared to except from discharge the Debtors' indebtedness to the Bank based on Code § 523(a)(6). To prevail under section 523(a)(6) a creditor must prove by a preponderance of the evidence that the debtor willfully and maliciously injured the creditor or property of the creditor. *See* FED. R. BANKR. P. 4005; *In re Keaty*, 397 F.3d 264 (5th Cir. 2005).

The Supreme Court has held the statutory words "willful and malicious" require something more than negligent or reckless conduct on the part of the debtor.[6] *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998). According to the Fifth Circuit, willful and malicious injury requires either subjective motive to cause harm or objective substantial certainty of injury. *Miller v. J.D. Abrahams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). The Bank has presented no evidence showing that the Debtor had a subjective intent to harm the Bank. Thus, whether the Debtors' indebtedness to the Bank should be excepted from discharge pursuant to section 523(a)(6) turns on a determination of whether the Debtors' actions in this case were, viewed objectively, substantially certain to injure the Bank.

The Bank has failed to satisfy its burden of showing, by a preponderance of the evidence, that at the time the Debtor improperly applied the proceeds of sale of the Bank's collateral, there was objective substantial certainty of injury to the Bank. That the Bank and Debtors stipulate that Childs' sale of the Bank's collateral constituted a willful and malicious injury to the Bank does not make it so. The court is not simply a rubber stamp for deals struck by attorneys, especially when the result would be a manifest injustice. The only evidence the Bank produced to support its allegation of willful and malicious conduct on the part of the Debtor is found at paragraph 28 of the stipulated facts:

> During its two (2) day review of the Debtors accounting records, the Bank found extensive documentation showing that Bill Childs had liquidated his livestock holdings and [sic] the prices that he received at auction…. The Bank was able to determine that some amount was paid to other creditors, and some amount had been used for the Debtors' living expenses.

---

[6] In the case at bar, it is hard to see Childs' conduct as more blameworthy than the Bank's appropriation to itself of the gain on the sale of Debtors' Camry. Surely if Childs, as alleged in the Complaint, is guilty of conversion, then so is the Bank.

As the record stands, there is insufficient evidence from which the court can determine that a debtor in Childs' position, when the collateral was being liquidated, would have been substantially objectively certain that the Bank would be injured by sale of the collateral. Many debtors teetering on the edge of insolvency that take actions similar to those taken by Childs in the instant case honestly believe they will be able to turn things around and satisfy their obligations.[7] Without a showing by the Bank that a reasonable man in Childs' position would be substantially certain of injury to the Bank, at the time Childs decided to use proceeds from the liquidation of collateral for purposes other than repaying the Bank, the court must deny the Bank's section 523(a)(6) claim.

Even if the Bank had presented evidence sufficient to support its claims, the Bank's conduct dissuades the court from granting the relief requested by the Bank. The Bank's allegations were brought with reckless disregard for the truth and fly in the face of information within the Bank's control. The Code bestows equitable powers on bankruptcy courts by providing that they "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code, *Coleman v. Community Trust Bank*, 426 F.3d 719, 726 (4th Cir. 2005) (quoting 11 U.S.C.A § 105(a) (West 2004)), and "like its predecessor statutes… [the Code] has been endowed with requirements of good faith…." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986). Every bankruptcy statute since 1898 has incorporated either expressly, or by judicial interpretation, a standard of good faith in bankruptcy proceedings. *In re Little Creek Dev. Co.*, 779 F.2d at 1071. "[A] good faith standard protects the

---

[7] Accepting that Childs' actions constituted conversion rather than, as alleged by the Bank in its state court suit, simply a breach of contract, the Supreme Court specifically recognized in Kawaauhau that "not every tort judgment for conversion is exempt from discharge." Kawaauhau, 523 U.S. at 63-64 (citing Davis v.

jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, *discharge of debts*, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands." *Id.* at 1071-72 (emphasis added).

In the present case, the Bank does not have clean hands. It filed the Complaint with reckless disregard for the truth, inconsistent with information within its control.[8] In the Complaint, the Bank alleged that Debtors should be denied their discharge based on Code § 727(a)(4) and (5) because Childs stated at the first meeting of creditors that he had paid at least some of the proceeds from the sale of the collateral to the Bank. The Bank "vehemently denie[d]" that it had received at least part of the proceeds from the collateral, and the Bank's representative swore by affidavit that the Bank had not "received any of the proceeds from the sale of collateral for application to the loans owed by George Childs and/or Suzanne Childs to the Bank." The court does not consider it credible that the Bank's own records would not reflect that part of the $71,485.21 paid by Debtors to the Bank between May 11, 1999, and May 25, 2000, was proceeds from the sale of collateral. At the very least, the Bank's records would show that the $17,051 received from Ritchie Brothers Auctioneers from the sale of the bulldozer constituted proceeds from the sale of collateral securing Childs' loans with the Bank.[9] The Bank

---

Aetna Acceptance Co., 293 U.S. 398 (1934)).

[8] The court notes that FED. R. BANK. P. 9011 provides that an attorney that signs a pleading, certifies "to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*… the allegations and other factual contentions have evidentiary support…" (emphasis added). Given the nature of the factual errors in the Bank's Complaint and the seriousness of the allegations contained therein, the court questions whether the allegations were formed after an inquiry reasonable under the circumstances.

[9] The facts stipulated to by the parties and the evidence entered by the Bank indicate that the Debtor initiated sale of the bulldozer and that Ritchie Brothers Auctioneers then forwarded proceeds to the Bank. The Bank's most recent brief, on the other hand, indicates that the Bank repossessed the bulldozer. The court accepts the facts as stipulated by the parties.

also alleged that the Debtors' discharge should be denied based on Code § 727(a)(3) for failing to list debt owed to the Bank, including a security interest in a Toyota Camry.  Surely the Bank knew that it had repossessed and sold the vehicle, realizing a gain on the sale.  The court is deeply concerned that despite information within the Bank's control that indicated the Bank's section 727 claims were baseless, the Bank insisted on bringing those claims in the Complaint.

    It distresses the court that, even in full light of its false allegations, the Bank insists that it has done nothing wrong and continues to blame the Debtors for its mistakes.  In its supplemental brief to the court, the Bank takes the position that Brent Vickery's affidavit, which states "First National Bank and Trust denies that it received any of the proceeds from the sale of the collateral for application to the loans owed by George Childs and/or Suzanne Childs to the Bank," was "filed in good faith and upon the only information available to the Bank at the time it was made." The Bank argues that because of the Debtors' alleged lack of cooperation in producing accounting documents and the impending deadline to object to discharge, the Bank was forced to file the Complaint.  However, the Code provides tools for dealing with such situations.  The Bank could have requested an extension of time to object to discharge under FED. R. BANKR. P. 4004.  Because the Bank chose to bring section 727 objections to discharge, which Congress included to protect the integrity of the bankruptcy system, with reckless disregard for the truth and without reasonable inquiry under the circumstances, the court, exercising its equitable powers, must deny all relief requested in the Complaint.

### IV.  Conclusion

    For the reasons stated above, the court holds Debtors' discharge should be granted.  The relief sought by the Bank in the Complaint is denied.  Counsel for the Debtors is instructed to

submit to the court a final judgment consistent with this opinion. The court reserves the right to assess costs against the Bank if appropriate.